IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TOM HAGAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> **Plaintiff,** <br><br> v. <br><br> CATERPILLAR, INC., <br><br> **Defendant.** | **CLASS ACTION COMPLAINT** <br><br> Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Tom Hagan ("Plaintiff"), on behalf of himself and all others similarly situated, through undersigned counsel, brings this class action against Caterpillar, Inc. ("Defendant" or "Caterpillar") and alleges, upon personal knowledge as to his own actions and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. On or about July 20, 2026, the ransomware group CoinbaseCartel publicly claimed responsibility for a cyberattack on Caterpillar. CoinbaseCartel infiltrated Caterpillar's systems and exfiltrated sensitive information of potentially thousands of individuals (the "Data Breach"). The group publicly stated that it had "infiltrated Caterpillar Inc. and obtained sensitive data," and threatened that a full data dump would be released if no contact was made.[1]

---

[1] https://www.dexpose.io/coinbasecartel-ransomware-attack-on-caterpillar-inc/

2. As a condition of employment, Defendant required employees like Plaintiff Hagan, as well as job applicants, to provide sensitive and confidential Personally Identifiable Information.

3. The information Plaintiff and Class Members were required to provide, and which Defendant failed to safeguard, monitor, maintain, and protect, included—upon information and belief—Social Security numbers, names, addresses, dates of birth, driver's license information, and financial account information (collectively, "Personally Identifiable Information," "PII," or "Private Information").

4. Caterpillar collects and maintains sensitive PII of its employees, applicants, and customers, and owes a duty of care to the individuals to whom that information pertains. That duty arises because it is foreseeable that the exposure of PII to hackers with nefarious intentions will result in harm to the affected individuals.

5. As a direct and proximate result of Caterpillar's deficient security practices, Plaintiff's and Class Members' PII is now in the hands of cybercriminals. Plaintiff's PII is available on the dark web because of the Data Breach.[2]

6. As a result of the Data Breach, Plaintiff and Class Members now face a substantial and imminent risk of identity theft, financial fraud, unauthorized account access, and other personal, social, and financial harms that will persist for life. Plaintiff and Class Members will continue to incur out-of-pocket expenses for the indefinite future for purchasing credit monitoring services and credit reports and other protective measures to deter and detect identity theft.

7. Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiff and Class Members' Private Information that Defendant collected and maintained.

---

[2] *Id.*

8. Plaintiff seeks remedies including, but not limited to, nominal damages, compensatory damages, reimbursement of out-of-pocket costs, the cost of identity theft protection, and injunctive relief including improvements to Defendant's data security systems and future annual audits funded by Defendant. Accordingly, on behalf of the Class, Plaintiff asserts claims for (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; and (iv) breach of fiduciary duty.

## PARTIES

9. Plaintiff Tom Hagan is, and at all times relevant hereto was, a citizen of the State of Illinois, residing in Metamora, Illinois. Mr. Hagan was employed at Defendant's manufacturing plant in East Peoria, Illinois, from 1978 to 2014, and was required to provide his PII to Defendant as a condition of that employment.

10. Defendant Caterpillar, Inc. is a corporation that designs, manufactures, and markets construction and mining equipment, engines, and related products. It is organized under the laws of Delaware and has its principal place of business in Irving, Texas.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction further to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which (a) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (b) members of the proposed class are citizens of states different from Defendant; and (c) the number of proposed class members exceeds 100.

12. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District and has sufficient minimum contacts with this District.

13. Venue is proper in the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant maintains its principal place of business in Dallas County, Texas, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

**A.   Defendant Collected, Maintained, and Stored PII.**

14. Defendant is one of the world's leading manufacturers of construction and mining equipment, headquartered in Irving, Texas, providing construction and mining equipment, engines, turbines, and related products and services.

15. Plaintiff and Class Members are current and former employees of Caterpillar. The Class Members also include contractors who provided services to Caterpillar.

16. To receive employment, Plaintiff and Class Members were required to provide Caterpillar with sensitive PII including their Social Security Numbers and financial information. Contractors were also required to provide Caterpillar with sensitive PII including their Social Security Numbers and financial information.

17. In addition to the categories of PII identified above, Plaintiff and Class Members provided Caterpillar with their telephone numbers, which Caterpillar collected and maintained together with their other PII in the systems compromised in the Data Breach.

18. Caterpillar represented that it would take steps to maintain that information is treated securely and in strict confidence and employ reasonable safeguards to protect it.[3]

19. Given the highly sensitive nature of the information it collects, Caterpillar is obligated to (a) keep employees' PII confidential; (b) follow industry-standard data-security practices;

---

[3] *Data Privacy Statement*, https://www.caterpillar.com/en/legal-notices/dataprivacy.html.

(c) inform employees and contractors of its data-security duties; (d) comply with all applicable federal and state privacy laws; (e) use or disclose the data only for legitimate business or administrative purposes; and (f) provide prompt notice of any unauthorized disclosure.

20.   By obtaining and benefiting from Plaintiff's and Class Members' PII, Caterpillar had legal and equitable duties to protect that data from unauthorized access or disclosure.

21. Without collecting such information, Caterpillar could not administer its employment relationships or contractor engagements.

22.   Plaintiff and Class Members reasonably relied on Caterpillar to maintain their PII securely and to disclose it only as authorized. Caterpillar ultimately failed to honor these duties.

**B.    Defendant's 2026 Data Breach Exposed PII.**

23.   On or about July 20, 2026, the CoinbaseCartel ransomware group claimed responsibility for a cyberattack that gained access to Caterpillar's systems and exfiltrated data belonging to current and former employees.[4]

24.   As of 2025, Defendant had more than 100,000 current employees worldwide.[5]

25.   Defendant did not use reasonable security procedures and practices appropriate to the nature of the PII it was maintaining for Plaintiff and Class Members prior to the cyberattack, causing the exposure of their PII.

26.   The CoinbaseCartel ransomware group accessed and acquired files in Defendant's systems containing, upon information and belief, unencrypted PII of Plaintiff and Class Members, including Social Security numbers, names, addresses, dates of birth, driver's license information, and financial account information.

---

[4] *Id.*
[5] Caterpillar Inc., Company Overview, https://www.caterpillar.com/en/company.html.

27.    CoinbaseCartel threatened to publish the stolen data unless Defendant initiated negotiations, consistent with the group's practice of leaking exfiltrated data on the dark web.[6]

28.    Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

**C.    Caterpillar Knew—or Should Have Known—of the Risk of a Data Breach.**

29.    Defendant derives a substantial economic benefit from its construction and mining equipment manufacturing operations, which rely on thousands of employee and contractor relationships through which Defendant requires, collects, and stores Plaintiff and Class Members' PII.

30.    Defendant was aware that the PII and financial information it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

31.    Defendant also knew that a breach of its systems and exposure of the information stored therein (including financial information) would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

32.    In recent years, numerous high-profile data breaches have occurred at financial institutions and businesses such as Equifax, Capital One, JPMorgan Chase, and countless others in the financial services industry.

33. Caterpillar itself experienced a prior data breach in 2007.[7]

34.    The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities.

---

[6] CoinbaseCartel Ransomware Attack on Caterpillar Inc., DeXpose (July 21, 2026), https://www.dexpose.io/coinbasecartel-ransomware-attack-on-caterpillar-inc/.
[7] *See, e.g.*, Caterpillar: Computer theft included employee identity data (April 27, 2007) https://www.marketwatch.com/story/caterpillar-computer-theft-included-employee-identity-data.

35.    In 2021 alone, there were 4,145 publicly disclosed data breaches, exposing 22 billion records. The United States specifically saw a 10% increase in the total number of data breaches.[8]

36.    In 2021, the FTC received approximately 5.7 million consumer reports through the Consumer Sentinel Network, including nearly 1.4 million reports of identity theft—and consumers reported losing more than $5.8 billion to fraud, an increase of more than 70 percent over the previous year.[9]

37.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. The FTC has also published guidance for businesses that have experienced a data breach.[10]

38.    Caterpillar was obligated to perform its business operations in accordance with industry standards. Industry standards require Caterpillar to exercise reasonable care with respect to Plaintiff and the Class Members by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and the Class Members. Industry best practices put the onus of adequate cybersecurity on the entity most capable of preventing a Data Breach. In this case, Caterpillar was the only entity responsible for adequately protecting the data that they alone solicited, collected, and stored.

---

[8] *See* Inga Goddijn, *Over 22 Billion Records Exposed in 2021*, Security Mag. (Feb. 10, 2022), https://www.securitymagazine.com/articles/97046-over-22-billion-records-exposed-in-2021.

[9] Fed. Trade Comm'n, *New Data Shows FTC Received 2.8 Million Fraud Reports from Consumers in 2021* (Feb. 22, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/02/new-data-shows-ftc-received-28-million-fraud-reports-consumers-2021-0.

[10] Fed. Trade Comm'n, *Data Breach Response: A Guide for Business* (Aug. 2023), https://www.ftc.gov/business-guidance/resources/data-breach-response-guide-business.

**D. Caterpillar Had a Duty to Safeguard Class Members' Private Information**

39.  Given that Caterpillar stored Plaintiff's and Class Members' PII and knew or should have known of the serious risk and harm caused by a data breach, Caterpillar was obligated to implement reasonable measures to prevent and detect cyber-attacks, such as those recommended by the FTC and promoted by data security experts and other agencies.

40.  That obligation stems from the foreseeable risk of a data breach given that Caterpillar collected, stored, and had access to highly sensitive personal records and data and because other highly publicized data breaches put Caterpillar on notice that the personal and sensitive data it stores might be targeted by cybercriminals.

41.  Caterpillar was aware of its obligation to implement and use reasonable measures to protect Private Information. Caterpillar's own Privacy Policy states that it "take[s] steps to ensure that your information is treated securely and in accordance with this Privacy Policy."[11]

42.  Despite the abundance and availability of information regarding cybersecurity best practices and the prevalence of data breaches, Caterpillar failed to adopt sufficient data security processes by, without limitation:

> a. Failing to properly implement adequate access controls and monitoring systems;
>
> b. Failing to ensure the proper monitoring and logging of network traffic;
>
> c. Failing to ensure the proper monitoring and logging of file access and modifications;
>
> d. Failing to ensure the proper training of employees as to cybersecurity best practices;
>
> e. Failing to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members;

---

[11] Caterpillar Inc., Data Privacy Statement, https://www.caterpillar.com/en/legal-notices/dataprivacy.html.

f. Knowingly disregarding standard information security principles by allowing inadequate security measures;

g. Failing to provide adequate supervision and oversight of the PII with which it was entrusted.

43. Caterpillar further failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data security incidents, to ensure the proper encryption of Plaintiff's and Class Members' PII, and to monitor user behavior and activity to identify possible threats.

44. The accessed and acquired PII of Plaintiff and Class Members is likely already available on the Dark Web.

45. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals.

46. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the publication of their PII onto the Dark Web.

47. For these reasons, the Federal Trade Commission ("FTC") recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account, reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[12]

48. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, or activity by cybercriminals on computer systems containing sensitive personal information including Social Security Numbers, addresses, names, dates of birth, driver's license information, and financial account information.

---

[12] *See* Fed. Trade Comm'n, How to Recover from Identity Theft (last updated Sept. 27, 2024), https://consumer.ftc.gov/consumer-alerts/2024/09/how-recover-identity-theft.

49. The Data Breach, coupled with CoinbaseCartel's claim of responsibility, the ongoing need to remediate Caterpillar's cybersecurity, and the highly sensitive nature of the affected data, collectively demonstrate that Caterpillar failed to implement reasonable measures to prevent cyber-attacks and to safeguard the PII it maintained and abrogated its duty to Plaintiff and Class Members.

**E.  Caterpillar Failed to Comply with FTC Guidelines.**

50. The FTC recognizes that consumer data is a valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour underscored this point by reiterating that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[13]

51. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[14]

52. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for business.[15]

53. Those guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed;

---

[13] Pamela Jones Harbour, Comm'r, Fed. Trade Comm'n, Remarks at the FTC Exploring Privacy Roundtable (Dec. 7, 2009),
https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.
[14] Fed. Trade Comm'n, *Start with Security: A Guide for Business* (June 2015),
https://www.ftc.gov/business-guidance/resources/start-security-guide-business.
[15] Fed. Trade Comm'n, *Data Security*, https://www.ftc.gov/business-guidance/privacy-security/data-security.

encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

54. The FTC has also issued, and regularly updates, guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business.[16] Reasonable data security protocols require:

a. Encrypting the information stored on computer networks;

b. Retaining payment card information only as long as necessary;

c. Properly disposing of personal information that is no longer needed or can be disposed of pursuant to relevant state and federal laws;

d. Limiting administrative access to business systems;

e. Using industry-approved tools;

f. Monitoring activity on networks to uncover unapproved activity;

g. Verifying that privacy and security features function properly;

h. Testing for common vulnerabilities; and

i. Updating and patching third-party software.[17]

55. The FTC cautions businesses that failure to protect PII and the resulting data breaches can destroy consumers' finances, credit history, and reputations, and can take time, money, and patience to resolve the effect. The FTC treats the failure to implement reasonable and adequate data security measures like Caterpillar failed to do here as an unfair act prohibited by Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

---

[16] Cybersecurity & Infrastructure Sec. Agency & Fed. Bureau of Investigation, *#StopRansomware Guide* (Oct. 2023), https://www.cisa.gov/stopransomware/ransomware-guide.
[17] *Id.*

56.  The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA.

57.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

58.  Caterpillar failed to properly implement basic data security practices.

59. Caterpillar was at all times fully aware of the obligation to protect the PII of employees and customers. Caterpillar was also aware of the significant repercussions that would result from its failure to do so.

**F.    The Value of Private Information and Risk of Harm.**

60. PII has considerable value and constitutes an enticing and well-known target to hackers, who can easily sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[18]

61. Cyberattacks and data breaches at companies like Caterpillar can negatively impact the overall daily lives of individuals affected by the attack.

62. The United States Government Accountability Office released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[19]

---

[18] *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), https://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/
[19] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 1 (June 2007), https://www.gao.gov/assets/a262904.html.

63. Often, the reason criminals steal PII is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim.

64. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

65. In addition, thieves may obtain a job using the victim's Social Security Number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in a record under the victim's name.

66. Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[20]

67. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

68. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

---

[20] *See, e.g.*, John T. Soma *et al.*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets,* 15 Rich J.L. & Tech. 11, at 3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted).

[21] *The GAO Report*, at 29.

69.    The Private Information of consumers has a high value to criminals, as evidenced by the prices offered for such information on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, according to the 2021 Dark Web Price Index, Private Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[22] The same report shows payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[23] Similarly, according to the Infosec Institute Private Information can sell for as much as $363 per record.[24]

70. It is not an easy task to change or cancel a stolen Social Security number as an individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse.

71.  Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

---

[22]*Your personal data is for sale on the dark web. Here's how much it costs*, DIGITAL TRENDS, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[23], Zachary Ignoffo, *Dark Web Price Index 2021*, March 8, 2021, PRIVACY TRENDS, available at: https://www.privacyaffairs.com/dark-web-price-index-2021/

[24]*See* Ashiq Ja, Hackers Selling Healthcare Data in the Black Market, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/

[25] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

72. This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at the cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[26]

73. There is a strong probability that entire batches of stolen information have been dumped on the black market and will continue to be dumped on the black market, meaning Plaintiff and Class Members are now at an increased risk of fraud and identity theft.

74. The Private Information exposed in the Data Breach is valuable to identity thieves for use in the kinds of criminal activity described below. These risks are both certainly impending and substantial.

75. Plaintiff and Class Members must vigilantly monitor their financial and other personal accounts for many years to come.

**G.  Plaintiff's and Class Members' Damages.**

76. Plaintiff and Class Members have been damaged by the unauthorized access and exfiltration of their PII in the Data Breach.

77. Plaintiff's and Class Members' PII was compromised in the Data Breach and is now in the hands of cybercriminals who accessed the data Caterpillar held within its systems without authorization. The PII exposed likely included the Social Security Numbers, names, addresses, dates of birth, driver's license information, financial account information, and other PII belonging to Caterpillar's current and former employees.

---

[26] Tim Hudsone, *Anthem Hack: Personal Data Stolen Sells for 10X Price of Stolen Credit Card Numbers*, Network World (Feb. 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

78. As a direct and proximate result of Caterpillar's conduct, Plaintiff and Class Members have been placed at an imminent and continuing increased risk of harm from fraud and identity theft.

79. As a direct and proximate result of Caterpillar's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach, valuable time Plaintiff and Class Members otherwise would have spent on other activities, including but not limited to work.

80. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

81. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

82. Plaintiff and Class Members will also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, and similar costs directly or indirectly related to the Data Breach.

83. Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyberthieves in the Data Breach.

84. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members who are current or former employees of, customers of, or contractors of Caterpillar, or who otherwise submitted their data to Caterpillar, overpaid for services like employee benefit funds and insurance that was intended to be accompanied by adequate data security that complied with industry standards.

85. Part of the bargain Plaintiff and Class Members had with Caterpillar was intended to be used by Caterpillar to fund adequate data security practices to safeguard Plaintiff's and Class Members' PII.

86. As demonstrated by the Data Breach, Caterpillar failed to fund and provide adequate data security practices. Thus, Plaintiff and the Class Members who are current or former employees and customers of Caterpillar did not get what they paid for and agreed to.

87. Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is in the possession of Caterpillar, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing PII is not accessible online or otherwise to unauthorized third parties.

88. The moment Plaintiff's and Class Members' PII was accessed and exfiltrated without authorization, Plaintiff's and Class Members suffered a loss of privacy. Further, as a result of Caterpillar's conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII will continue to be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

89. As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have suffered emotional distress and loss of privacy and are at an increased risk of future harm.

90. The injuries to Plaintiff and the other Class Members were reasonably foreseeable because Caterpillar had experienced a prior cyberattack, Caterpillar knew or should have known that its systems used for safeguarding PII were inadequately secured and exposed consumer PII to being breached, accessed, and stolen by hackers and unauthorized third parties. As such,

Caterpillar's own misconduct created a foreseeable risk of harm to Plaintiff and the other Class Members.

## REPRESENTATIVE PLAINTIFF'S EXPERIENCE

91.  Plaintiff Hagan was an employee of Defendant Caterpillar at its manufacturing plant in East Peoria, Illinois, between 1978 and 2014.

92. As a condition of employment with Defendant, Plaintiff Hagan was required to provide his PII, including his full name, date of birth, Social Security Number, driver's license or State ID Number, financial account information, medical information, health insurance information, and digital signature, to Defendant.

93. Defendant maintained Plaintiff Hagan's PII in its systems at the time of the Data Breach.

94.     On or about July 20, 2026, Defendant's systems were accessed by the cybercriminal group CoinbaseCartel. Plaintiff Hagan's PII—including, upon information and belief, his Social Security number, address, date of birth, driver's license information, and financial account information—was accessed or acquired without his authorization as a result of the Data Breach.

95. Plaintiff Hagan is very careful about sharing his sensitive PII. He stores any documents containing PII in a safe and secure location. Plaintiff Hagan has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Hagan would not have entrusted his PII to Defendant had he known of Defendant's lax data security policies.

96. As a result of the Data Breach, Plaintiff Hagan spent multiple hours and expended reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, reviewing credit monitoring and identity theft protection services and monitoring financial accounts for any unusual activity which may take years to detect.

Plaintiff Hagan has spent significant time dealing with the Data Breach—valuable time he otherwise would have spent on other activities, including but not limited to work and recreation. This time has been lost forever and cannot be recaptured.

97. Plaintiff Hagan values his privacy and is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach.

98. Had Plaintiff Hagan been informed of Caterpillar's insufficient data security measures to protect his Private Information, he would not have willingly provided his Private Information to Caterpillar. Given the highly sensitive nature of the Private Information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff Hagan has already suffered injury and remains at a substantial and imminent risk of future harm. As a result of the Data Breach, Plaintiff Hagan anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

99. Plaintiff Hagan suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to: (i) loss of privacy; (ii) theft of his PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

100.    Plaintiff Hagan suffered actual injury the moment his PII was accessed and exfiltrated without authorization.

101.    After the Data Breach, Plaintiff Hagan suffered actual misuse of his Private Information. Specifically, Plaintiff Hagan began receiving a significant increase in unsolicited spam calls on a daily basis to the same phone number provided to Defendant. Plaintiff Hagan reasonably believes this misuse is related to the Data Breach because the calls began shortly after the Data Breach and involve unknown third parties using the same Private Information compromised in the Data Breach.

102.    The unwanted communications Plaintiff Hagan is receiving are a distraction, must be blocked, and waste Plaintiff Hagan's time each day. Further, these spam calls are evidence that Plaintiff Hagan's Private Information is now available for exploitation by cybercriminals.

103.    As a result of the Data Breach, Plaintiff Hagan is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

104.    Plaintiff Hagan has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

105.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated for the Class defined below.

106.    The Class that Plaintiff seeks to represent (the "Class") is defined as follows:

> All individuals residing in the United States whose PII was compromised
> by Caterpillar's Data Breach.

107.    The following people are excluded from the Class: (i) any judge or magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries,

parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and its current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

108.    Numerosity: The exact number of members of the Class is unknown but, upon information and belief, it is estimated to number in the tens or hundreds of thousands at this time, and individual joinder in this case is impracticable. Members of the Class can be easily identified through Defendant's records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other data breach, consumer breach of contract, unlawful trade practices, and class action controversies.

109.    Typicality: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff, and the members of the Class, sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices, and Plaintiff and members of the Class sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct.

110.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

111.    Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a. Whether Defendant had a duty to use reasonable care to safeguard Plaintiff's and Class Members' PII;

b. Whether Defendant breached the duty to use reasonable care to safeguard Plaintiff's and Class Members' PII;

c. Whether Defendant knew or should have known about the inadequacies of its data security policies and system and the dangers associated with storing PII;

d. Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

e. Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

f. What the proper measure of damages is; and

g. Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

112. Superiority: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Caterpillar's actions. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

113. Ascertainability: All members of the proposed Class are readily ascertainable. Caterpillar has access to Class Members' names and addresses affected by the Data Breach.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### NEGLIGENCE
#### *(On Behalf of Plaintiff & the Class)*

114. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

115. Caterpillar required its employees and contractors, including Plaintiff and Class Members, to submit their PII to obtain employment from or work for Caterpillar.

116. By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Caterpillar owed a duty of care to use reasonable means to secure and safeguard its computer system, including Plaintiff's and Class Members' PII, to prevent disclosure of the information, and to safeguard the information from theft. Caterpillar's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

117. Caterpillar owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, the personnel responsible for them, and its information technology partners adequately protected the PII.

118. The Data Breach was foreseeable and Caterpillar was on notice of its own security vulnerabilities since it was the subject of a data breach in 2007 (and potentially others). The Data Breach was also foreseeable due to the high volume of data breaches to similar entities in the industry.

119.     Plaintiff and the Class are a well-defined, foreseeable, and probable group of employees and customers that Caterpillar was aware, or should have been aware, could be injured by inadequate data security measures.

120.     A large repository of highly valuable personal information is a foreseeable target for cybercriminals looking to steal and profit from that PII. Caterpillar knew or should have known that, given its repository of a host of PII for thousands of employees and customers, it posed a significant risk of being targeted for a data breach. Thus, Caterpillar had a duty to reasonably safeguard Plaintiff's and Class Members' data by implementing reasonable data security measures to protect against data breaches. The foreseeable harm to Plaintiff and the Class of inadequate data security created a duty to act reasonably and safeguard the PII.

121.     PII is highly valuable, and Caterpillar knew, or should have known, the risk in obtaining and storing the PII of Plaintiff and Class Members. Thus, Caterpillar knew, or should have known, the importance of exercising reasonable care in handling the PII entrusted to it.

122.     Caterpillar's duty of care to use reasonable security measures also arose as a result of the special relationship that existed between Caterpillar and its employees and customers. Caterpillar was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from the Data Breach.

123.     The moment Plaintiff's and Class Members' PII was accessed and exfiltrated without authorization, Plaintiff suffered actual injury in the form of loss of privacy.

124.     Caterpillar also has a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use

24

reasonable measures to protect confidential data. *See, e.g., F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015).

125. Caterpillar's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Caterpillar is bound by industry standards to protect confidential PII.

126. Caterpillar breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Caterpillar include, but are not limited to, the following:

   a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

   b. Failing to adequately monitor the security of its networks and systems;

   c. Failing to have in place mitigation policies and procedures;

   d. Allowing unauthorized access to Plaintiff's and Class Members' PII;

   e. Failing to detect in a timely manner that Plaintiff's and Class Members' PII had been compromised; and

   f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

127. Caterpillar breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite the known risk of data breaches, and allowing unauthorized access to Plaintiff's and Class Members' PII.

128. The failure of Caterpillar to comply with industry standards and federal regulations evidences Caterpillar's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII.

129. But for Caterpillar's wrongful and negligent breach of its duties to Plaintiff and Class Members, their PII would not have been compromised, stolen, and viewed by unauthorized persons. Caterpillar's negligence was a direct and legal cause of the theft of the PII of Plaintiff and Class Members and all resulting damages.

130. It was foreseeable that Caterpillar's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

131. It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to Plaintiff and Class Members.

132. As a result of this misconduct by Caterpillar, the PII of Plaintiff and Class Members was compromised, placing them at a greater risk of identity theft and of their PII being disclosed to third parties without the consent of Plaintiff and the Class.

133. Plaintiff and Class Members are entitled to nominal, compensatory and consequential damages suffered as a result of the Data Breach.

134. Plaintiff and Class Members are also entitled to injunctive relief requiring Caterpillar to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiff and all Class Members.

### SECOND CAUSE OF ACTION
#### BREACH OF IMPLIED CONTRACT
#### *(On Behalf of Plaintiff & the Class)*

135. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

136. Defendant Caterpillar required Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining services from Defendant or obtaining employment with Defendant.

137. Defendant Caterpillar promised to comply with legal and industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

138. Implicit in the agreement between Defendant Caterpillar and Plaintiff and Class Members was the obligation that both parties would maintain the PII confidentially and securely.

139. Defendant Caterpillar had implied duties of good faith to ensure that the PII of Plaintiff and Class Members in their possession was used only as authorized.

140. Caterpillar had implied duties to protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses.

141. Additionally, Caterpillar implicitly promised to retain this PII only under conditions that kept such information secure and confidential.

142. Through their course of conduct, Caterpillar, Plaintiff and Class Members entered into implied contracts for Caterpillar to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

143. Caterpillar solicited and invited Plaintiff and Class Members to provide their PII as part of Caterpillar's regular business practices. Plaintiff and Class Members accepted Caterpillar's offers and provided their PII to Caterpillar.

144. Through overt acts and words, Caterpillar manifested its assent to a bargain under which, in exchange for Plaintiff's and Class Members' labor and the PII they were required to provide, Caterpillar would safeguard that PII using reasonable, industry-standard data security.

145.    Plaintiff and Class Members fully performed their obligations under the implied contract with Caterpillar. Caterpillar did not. Plaintiff and Class Members would not have provided their confidential PII to Caterpillar in the absence of their implied contracts with Caterpillar and would have instead retained the opportunity to control their PII for uses other than obtaining benefits and services from Caterpillar.

146.    Caterpillar breached the implied contracts with Plaintiff and Class Members by failing to safeguard and protect Plaintiff's and Class Members' PII, including Social Security numbers, names, addresses, dates of birth, driver's license information, and financial account information and violating industry standards as well as legal obligations that are necessarily incorporated into implied contracts between Plaintiff, Class Members, and Caterpillar.

147.    Caterpillar's failures to meet these promises constitute breaches of the implied contracts.

148.    Caterpillar's acts and omissions have materially affected the intended purpose of the implied contracts requiring Plaintiff and Class Members to provide their PII in exchange for services and employment benefits.

149.    As a direct and proximate result of Caterpillar's above-described breach of implied contract, Plaintiff and Class Members have suffered and will continue to suffer (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the possibility of an illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

150.    As a direct and proximate result of Caterpillar's above-described breach of contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

### THIRD CAUSE OF ACTION
#### UNJUST ENRICHMENT
#### *(On Behalf of Plaintiff & the Class)*

151.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

152.    This claim is pleaded in the alternative to Plaintiff's breach of implied contract claim.

153.    Plaintiff and Class Members conferred a monetary benefit on Defendant Caterpillar through their employment and services to Defendant. A portion of the proceeds of this benefit was intended to have been used by Defendant for data security measures to secure Plaintiff and Class Members' PII. Plaintiff and Class Members further conferred a benefit on Defendant by entrusting their PII to Defendant from which Defendant derived profits.

154.    Defendant Caterpillar enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

155.    Under the principles of equity and good conscience, Defendant Caterpillar should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant

failed to implement appropriate data management and security measures that are mandated by industry standards.

156. Defendant Caterpillar acquired the monetary benefit and PII through inequitable means in that Defendant failed to disclose the inadequate security practices, as described herein, and failed to maintain adequate data security.

157. If Plaintiff and Class Members knew that Defendant Caterpillar had not secured their PII, they would not have agreed to give their money—or disclosed their data— to Defendant.

158. Plaintiff and Class Members have no adequate remedy at law.

159. As a direct and proximate result of Defendant Caterpillar's conduct, Plaintiff and Class Members have suffered and will continue to suffer various injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their PII is used; (3) the compromise, publication, and theft of their PII, including Social Security Numbers, addresses, names, dates of birth, driver's license information, and financial account information; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and unauthorized use of their PII; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their PII, which remains in Defendant Caterpillar's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their possession; and (7) future expenditures of time, effort, and money that will be spent trying to prevent, detect, contest, and repair the impact of Defendant's Data Breach.

160.     The benefits that Defendant Caterpillar derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles for Defendant to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and data security practices alleged in this Complaint.

161.     Defendant Caterpillar should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds it received as a result of its conduct and the Data Breach alleged herein.

## FOURTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### *(On Behalf of Plaintiff & the Class)*

162.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

163.     In light of the special relationship between Defendant Caterpillar and Plaintiff and Class Members, whereby Defendant became guardians of Plaintiff's and Class Members' PII, Defendant became a fiduciary by its undertaking and guardianship of PII, to act primarily for Plaintiff and Class Members: (1) for the safeguarding of Plaintiff's and Class Members' PII; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

164.     Defendant Caterpillar has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its relationship with current and former employees and customers to keep secure their PII.

165.     Defendant Caterpillar breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give detailed notice of the Data Breach to Plaintiff and the Class in a reasonable and practicable period of time.

31

166. Defendant Caterpillar breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' PII.

167. Defendant Caterpillar breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify or warn Plaintiff and Class Members of the Data Breach.

168. Defendant Caterpillar breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PII.

169. As a direct and proximate result of Defendant Caterpillar's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII, which remains in Defendant Caterpillar's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant Caterpillar's services they received.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Hagan, on behalf of himself and all persons similarly situated, prays for judgment in his favor and against Defendant Caterpillar, Inc., and respectfully requests

that this Honorable Court enter an order:

    A.    certifying this action as a Class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

    B.    granting equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

    C.    granting equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

    D.    granting equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

    E.    requiring Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

    F.    awarding nominal damages, actual damages, and compensatory damages, in an amount to be determined, as allowable by law;

    G.    awarding attorneys' fees and costs under the common fund doctrine, and any other applicable law;

    H.    awarding attorneys' fees, costs and any other expense, including expert witness fees, incurred by Plaintiff in connection with this action, as allowed by applicable law;

    I.    awarding pre- and post-judgment interest on any amounts awarded; and

    J.    all such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: July 23, 2026        Respectfully submitted,

        By: /s/ *William B. Federman*

        William B. Federman, TBA #00794935
        Anushe Zebal, TBA 24143548
        **FEDERMAN & SHERWOOD**
        4131 North Central Expressway, Suite 900
        Dallas, TX 75204
        Telephone: (800) 237-1277

Facsimile: (405) 239-2112
wbf@federmanlaw.com
anz@federmanlaw.com

Britany A. Wessan\*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Ph: (708) 529-5418
britany@almeidalawgroup.com
*\*pro hac vice forthcoming*

*Counsel for Plaintiff & the Proposed Class*

34